



**U.S. Department of Justice**

United States Attorney

District of Maryland

*Tamera L. Fine*
*Assistant United States Attorney*
*Tamera.Fine@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

*DIRECT: 410-209-4806*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

November 21, 2013

Gary Proctor, Esquire
Law Offices of Gary E. Proctor LLC
Eight E. Mulberry Street
Baltimore, MD 21202

Re:   Plea Agreement in the Case of United States v. Tyrone Gregg,
      Criminal No. CCB 13 0131

Dear Mr. Proctor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Tyrone Gregg by January 10, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.     The Defendant agrees to plead guilty to Counts One and Three of the Second Superseding Indictment now pending against him, which charge him in Count One with Bank Fraud Conspiracy, in violation of 18 U.S.C. §1349 and in Count Three with Aggravated Identity Theft, in violation of 18 U.S.C. §1028A. The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offense

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Bank Fraud Conspiracy

    a.   There was a conspiracy to commit bank fraud, that is, a scheme to defraud a financial institution or obtain money or property owned by or under the custody and control of a financial institution by means of false or fraudulent pretenses, representations or promises.

    b.   The defendant knowingly joined the conspiracy.

1

    c.  One or more of the banks involved were insured by the Federal Deposit Insurance Corporation at the time of the conspiracy.

Aggravated Identity Theft

    a.  Defendant knowingly transferred, possessed, or used the means of identification of another person (including knowing that the means of identification belonged to another person).

    b.  Defendant did not have legal authority to use transfer, use or possess the means of identification.

    c.  Defendant transferred, possessed or used the means of identification during and in relation to a felony violation set forth in 18 U.S.C. '1028A.

## Penalties

3.    The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows: for Bank Fraud Conspiracy (Count One), 30 years period of incarceration, five years of supervised release and a $1,000,000.00 fine; for Aggravated Identity Theft (Count Three), two years mandatory consecutive period of incarceration, one year supervised release, and a $250,000.00 fine. In addition, the Defendant must pay $200.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.    The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a.    If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise

unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.     The Defendant would have the right to testify in his own defense if he so chose and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

     5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing

Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.     The base offense level for Count One is seven (7) under U.S.S.G. §2B1.1(a)(1).

b.     Because the intended loss during the period of time the Defendant was involved in the conspiracy was more than $70,000 but less than $120,00, an additional eight (8) levels must be added under U.S.S.G. § 2B1.1(b)(1)(E).

c.     Because the offense involved more than 10 but less than 50 victims. an additional two (2) levels must be added under U.S.S.G. § 2B1.1(b)(2)(A).

d.     Because the offense involved sophisticated means, an additional two (2) levels must be added under U.S.S.G. § 2B1.1(b)(10).

e.     This Office does not oppose a two level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty.  This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

f.     Defendant's adjusted guidelines level for Count One is 16.

g.     Pursuant to U.S.S.G. § 2B1.6(a), an additional 24 months of imprisonment must be imposed for Count Three, to run consecutively to the sentence imposed on Count One.

7.     The parties agree that the defendant has 20 criminal history points, placing him in Criminal History Category VI, as set forth in a pre-plea criminal history prepared by the United States Probation Office.

8.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9.      At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Restitution

11. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' actual losses with regard to the identities compromised during the time the Defendant was participating in the scheme. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663, 3663A, 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Collection of Financial Obligations

12.      The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

13.      In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

14.      The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and

understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

15.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b.    The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the sentencing range set forth in guidelines level 16, plus 24 months consecutive for Count Three; and (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below the sentencing range set forth in guidelines level 16, plus 24 months consecutive for Count Three.

c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

16.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge

personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

17.    The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Tamera L. Fine
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/4/13
Date

_____
Tyrone Gregg

I am Tyrone Gregg's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

12-4-13
Date

_____
Gary Proctor, Esquire

Attachment A
Factual Stipulation

*If this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt. The Defendant agrees that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

1.      From on or about May 8, 2012 through on or about August 17, 2012, in the State of Maryland, Tyrone Kevin Gregg (the "Defendant") conspired and agreed together with his co-defendants Ashley Avery and Keir Hicks ("Mouse") and others to execute a scheme and artifice to defraud various financial institutions, by using personal identity information to open instant credit accounts at retail stores, then using the instant credit to purchase high value merchandise.

2.      The Defendant did not himself procure the stolen identity information, but he knew that the identity information was stolen and belonged to real people who had established credit and credit scores high enough to obtain additional credit.

3.      Co-Defendant Keir Hicks was responsible for creating fake identification documents using the personal identity information of the identity theft victim and the photograph of co-conspirators, such as the Defendant.

4.      The Defendant received the identity information from Ashley Avery and the identification cards from either Ms. Avery or Keir Hicks. Usually accompanied by Ms. Avery, the Defendant would enter a retail store and apply for instant credit using the personal identity information he had received, including a name, address, date of birth and social security number. He would use the fake identification to pose as the identity theft victim. If he was approved for credit, he and Ms. Avery would use the credit to purchase items such as electronics and gift cards.

5.      For example, on August 7, 2012, the Defendant used personal identity information of a victim, including the victim's name and social security number, to apply for and establish a Kohl's credit account, issued by Capital One Bank, N.A., an FDIC insured institution. He then used that account to purchase merchandise. The Defendant did not have the permission of the victim to use the personal identity information, and the credit application was made without the victim's knowledge or consent. The Defendant was accompanied by Ashley Avery when he applied for the credit on August 7, 2012, and he used a counterfeit identification manufactured by Keir Hicks.

6.      During the course of the conspiracy, the Defendant and his co-conspirators obtained credit in excess of $100,000 from or using the identity information of more than 10 institutional and individual victims.

I have read this Factual Stipulation and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. It accurately reflects what I did and what the government could prove I did. I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_12/4/13_
Date

_Tyrone Gregg_

I am Tyrone Gregg's attorney. I have carefully reviewed every part of this Factual Stipulation, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_12/4/13_
Date

_Gary Proctor, Esquire_